# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **PATRICK EDWARDS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:17-cv-00680** |
| | ) | **Judge Trauger** |
| **JONATHAN LEBO, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM</u>

Patrick Edwards, a state inmate, filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. No. 1), and the respondent filed a response. (Doc. No. 14.) For the following reasons, the Petition will be denied and this action will be dismissed.

## I.      Procedural Background

In January 2007, a Davidson County grand jury indicted the petitioner for first degree felony murder and first degree premeditated murder. (Doc. No. 13-1 at 4–7.) The case proceeded to trial, but the court granted a mistrial at the request of the petitioner's counsel. (*Id.* at 78.) The petitioner later pleaded guilty to the lesser-included offense of second degree murder on count one, and count two was dismissed. (*Id.* at 79–82.) As a result, the petitioner faced a range of 15 to 25 years' imprisonment, to be determined by the court at a sentencing hearing. (*Id.* at 79–80.) The court sentenced the petitioner to 21 years' imprisonment. (*Id.* at 86.) The Tennessee Court of Criminal Appeals ("TCCA") affirmed the court's judgment, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal on May 26, 2011. *State v. Edwards*, No. M2009-01277-CCA-R3-CD, 2011 WL 497444, at *1, 4 (Tenn. Crim. App. Feb. 11, 2011), *perm. app. denied* May 26, 2011.

On June 1, 2011, the trial court received the petitioner's *pro se* petition for post-conviction relief. (Doc. No. 13-15 at 12–18.) The court appointed counsel (*id.* at 28–29), and the petitioner filed an amended petition (*id.* at 34–41). The court held an evidentiary hearing (*id.* at 45; Doc. No. 13-17) and then dismissed the petition (Doc. No. 13-15 at 46–50; Doc. No. 13-16 at 3–8). The TCCA ultimately[1] affirmed the court's judgment, and the Tennessee Supreme Court denied discretionary review on August 18, 2016. *Edwards v. State*, No. M2014-01839-CCA-R3-PC, 2016 WL 1161084, at *1, 7 (Tenn. Crim. App. Mar. 23, 2016), *perm. app. denied* Aug. 18, 2016. The petitioner then filed a timely *pro se* habeas petition in this court. (Doc. No. 1.)

## II. Factual Background

At the plea hearing, the state provided a factual basis for the petitioner's plea. According to the state, five individuals—including the victim, Christopher Hudson—went to Nashboro Village to buy ecstasy from the petitioner and co-defendant Ryan Lewis. (Doc. No. 13-8 at 7.) The petitioner was in the driver's seat of a car at the scene, with Lewis in the passenger's seat. (*Id.*) Hudson approached the car, leaned in on the driver's side, and saw the petitioner's gun. (*Id.*) Hudson "became frightened and started running back behind the car," and the petitioner shot Hudson "in the back as he was running." (*Id.*) As Hudson "tried to crawl to the sidewalk," the petitioner got out of the car and went to where Hudson was lying. (*Id.*) If the case had proceeded to trial, co-defendant Lewis would have testified that he and the petitioner intended to rob Hudson and that the petitioner took over one hundred dollars from Hudson's body. (*Id.*) Lewis would have testified that he and the petitioner returned to an apartment and divided the money. (*Id.*) Police went to this apartment and then a man named Corey Ashley took them to another home to retrieve

---

[1] The TCCA first granted the petitioner's motion to file a late appeal of the court's decision denying post-conviction relief (Doc. No. 13-15 at 59) and then remanded the case to the post-conviction court with instructions to "enter an amended order which includes findings of fact and conclusions of law for the issues raised" in the petitioner's *pro se* post-conviction petition and the petitioner's amended post-conviction petition (Doc. No. 13-16 at 2).

the gun used to shoot Hudson. (*Id.* at 7–8.) The petitioner testified that these facts were basically

true, but he disputed Lewis's expected trial testimony. (*Id.* at 8–9.)

At the sentencing hearing, police detective Robert Swisher testified that he interviewed the

petitioner after taking him and co-defendant Lewis into custody. (*Id.* at 15.) The court viewed a

video of this interview, and the TCCA summarized it as follows on direct appeal:

> [The petitioner] told detectives that he had completed the eighth grade and that he
> lived in Nashville. He told detectives that his co-defendant, Ryan Lewis, had gotten
> a phone call from the victim asking for drugs. [The petitioner] drove himself and
> Mr. Lewis to meet the victim. [The petitioner] stated that the victim, who was
> standing at the driver's side window of the vehicle, tried to grab the drugs from Mr.
> Lewis, who was reaching across [the petitioner]. The victim then swung a stick at
> them and grabbed [the petitioner's] jacket. [The petitioner] pulled out a gun, and
> the victim started running. [The petitioner] told detectives that he fired the gun "to
> scare him off." [The petitioner] hit another car as he drove away. [The petitioner]
> told detectives that he had purchased the gun from a man on the street for one
> hundred dollars. Detective Swisher also testified that [the petitioner's] fingerprint
> was found on a box of ammunition.

*Edwards*, 2011 WL 497444, at *1. The TCCA also summarized Lewis's sentencing hearing

testimony:

> Ryan Lewis testified that he knew [the petitioner] through [the petitioner's] cousin,
> Corey Ashley. He testified that he knew the victim in this case, Christopher
> Hudson, because he had sold drugs to him before at Dover Glen Apartments. On
> the evening of the crime, Mr. Hudson called Mr. Lewis, while Mr. Lewis was with
> [the petitioner] and Mr. Ashley, and had requested to purchase some ecstasy pills.
> Mr. Lewis initially told Mr. Hudson that he did not have any pills, but in another
> conversation later that evening, he told Mr. Hudson that [the petitioner] and Mr.
> Ashley had drugs to sell.
>
> Mr. Lewis testified that [the petitioner], Mr. Ashley, and he discussed a plan to rob
> Mr. Hudson. [The petitioner] and Mr. Lewis drove to Nashboro Village and pulled
> in facing Mr. Hudson's vehicle. Mr. Ashley drove another vehicle and his role in
> the robbery was to be the "lookout." Mr. Hudson walked to the driver's side
> window of the vehicle where [the petitioner] was, and leaned into the car. Mr. Lewis
> testified that [the petitioner] pulled out the pistol and demanded the money. Mr.
> Hudson turned to run away, and [the petitioner] shot him. Mr. Lewis opened the
> passenger's side door to run, and [the petitioner] pointed the pistol at him and told
> him to get back in the car. [The petitioner] got out of the car to retrieve the drugs
> and the money that fell on the ground. Mr. Lewis did not see that the victim had

any kind of weapon; however, he testified, someone threw something "like a stick, or a bat, or something" at the car as they drove away. As they left Nashboro Village, Mr. Lewis saw Corey Ashley speed away in his vehicle. [The petitioner] and Mr. Lewis returned to Dover Glen Apartments. On the way there, [the petitioner] told Mr. Lewis to change his cell phone number, which he did. When they arrived back at the apartments, Mr. Ashley was there. Mr. Ashley made a phone call to get rid of the gun. The three men divided up the money. The police arrived about two hours later. Mr. Lewis testified that he initially lied to police.

*Id.* at *2. Finally, the TCCA summarized the sentencing hearing testimony of petitioner's mother as follows:

Pamela Rooks, [the petitioner's] mother, testified that [the petitioner] was nineteen or twenty years old at the time of his arrest. He had not been living with her for a few months before his arrest because [the petitioner] "was doing some things that [she] didn't approve of." She testified that [the petitioner] had dropped out of school after the seventh or eighth grade. Mrs. Rooks testified that [the petitioner's] father left home when [the petitioner] was about one-year old. [The petitioner's] father was not consistently involved with [the petitioner]. [The petitioner] went to live with his father for one year when [the petitioner] was thirteen years old. Mrs. Rooks knew that [the petitioner] had smoked marijuana, but she denied knowledge of any other drug use. She testified that when her son was about eighteen years old, he had attempted suicide by taking pills and was hospitalized for about one week. Several of [the petitioner's] family members prepared letters in support of [the petitioner], which were admitted into evidence.

*Id.*

## III.    Asserted Claims for Relief

In the Petition, the petitioner asserts that his: (1) confession was coerced; (2) plea was unknowing and involuntary; (3) sentence was improper; (4) conviction was not supported by sufficient evidence; (5) trial counsel was ineffective; and (6) post-conviction counsel was ineffective. He asserts that his trial counsel was specifically ineffective in failing to: (1) present mitigating evidence at sentencing; (2) move to suppress his confession; (3) allow him to proceed to trial rather than plead guilty; (4) investigate co-defendant Ryan Lewis; (5) object to application of enhancement factors at sentencing; (6) appeal the court's application of sentencing enhancement factors; and (7) consult with his first appointed attorney. (Doc. No. 1.)

## IV. Standard of Review

Federal courts have the authority to grant habeas corpus relief to state prisoners under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Where a petitioner's claim was "adjudicated on the merits" in state court, a federal court may not grant habeas relief unless the state's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "The petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state

court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—"rather," the federal court must find the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To obtain relief under Section 2254(d)(2), the federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

The demanding review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement" under which "a federal court may not review federal claims that . . . the state court denied based

on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). A petitioner may establish cause by "show[ing] that some objective factor external to the defense"— a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). There is also "a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke*, 541 U.S. at 392 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted).

## V. Analysis

The court will first address claims adjudicated in state court and then turn to procedurally defaulted claims. As an initial matter, however, the court notes that the petitioner's assertion of ineffective assistance of post-conviction counsel is not an independent ground for habeas relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State

collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Nonetheless, post-conviction ineffectiveness may be used to establish the "cause" necessary to obtain review of another procedurally defaulted claim in some circumstances. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). Thus, the court will consider the assertion of post-conviction ineffectiveness as allegations of "cause" regarding the petitioner's defaulted claims.

### A.    Adjudicated Claims

On post-conviction appeal, the petitioner exhausted a claim that his guilty plea was not knowing and voluntary and two of his seven sub-claims for ineffective assistance of trial counsel— that counsel coerced him to plead guilty and failed to present mitigating evidence at sentencing. *Edwards*, 2016 WL 1161084, at *1, 4–7.

### 1.    Knowing and Voluntary Plea

The petitioner asserts that his plea was not knowing and voluntary because his counsel coerced him into pleading guilty by working with the prosecution and contacting his mother. (Doc. No. 1 at 7.) In affirming the dismissal of the petitioner's post-conviction petition, the TCCA accurately identified the federal standard for determining whether a guilty plea is knowing and voluntary:

> When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Don Allen Rodgers v. State*, No. W2011–00632–CCA–R3–PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." *Blankenship*, 858 S.W.2d at 904 (quoting *Boykin*, 395 U.S. at 242–43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *see Howell v. State*, 185 S.W.3d 319, 330–31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." *Id.* at 74.

*Id.* at *5–6.

The TCCA then rejected the petitioner's claim on the merits:

In this case, the Petitioner and his mother testified that he dropped out of school around the ninth grade. Additionally, trial counsel testified that she strongly encouraged the Petitioner to take the plea. The Petitioner stated that he spoke with his mother and trial counsel about taking the plea but denied that they forced him to accept the guilty plea. The Petitioner confirmed that he met with trial counsel many times and that she discussed the strength of the State's case with the Petitioner. The Petitioner stated that he understood he could have received a sentence of fifty-one years if he had been convicted of first degree murder after trial. He also understood that the maximum sentence he could have received for his guilty plea was twenty-five years. It is well-settled law that the inducement to plead guilty in exchange for a more lenient or shorter sentence does not constitute grounds for invalidating the plea. *See Blankenship*, 858 S.W.2d at 904; *George v. State*, 533 S.W.2d 322, 326 (Tenn. Crim. App. 1975). The Petitioner also confirmed that he understood that he was pleading guilty and that he decided to plead guilty on his own accord. The transcript of the plea hearing shows that the trial court conducted

an appropriate *Boykin* plea colloquy, informing the Petitioner of his rights, and the Petitioner stated that he understood he was waiving those rights by entering a guilty plea. Based on the record before us, the Petitioner failed to prove by clear and convincing evidence that his plea was unknowingly and involuntarily entered. He is not entitled to relief.

*Id.* at *7.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and it was not based on an unreasonable determination of the facts before it. As reflected above, the TCCA reviewed transcripts of the petitioner's plea hearing and the post-conviction evidentiary hearing. *Id.* at *6. During the plea colloquy, the court specifically asked the petitioner if anyone had forced or threatened him in any way to plead guilty, and he responded "no." (Doc. No. 13-8 at 6.) The petitioner also explicitly affirmed that he signed the plea petition freely and voluntarily. (*Id.*) The TCCA appropriately noted that such plea hearing testimony "carries great weight." *Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (citing *Blackledge*, 431 U.S. at 73–74). Through the plea petition itself, the petitioner also declared that "no person ha[d] pressured, forced, threatened or intimidated" him into pleading guilty. (Doc. No. 13-1 at 80.)

At the evidentiary hearing, the petitioner testified that he "[k]ind of" felt pressured into pleading guilty by his trial counsel and his mother. (Doc. No. 13-17 at 24.) But on cross-examination by the state, the petitioner also testified as follows:

Q.    Ms. Deaner didn't make you plead guilty; did she? That was your decision; wasn't it?

A.    Yes.

Q.    And you, also, talked to your mother about your decision; right?

A.    Yes.

Q.    Your mother didn't make you plead guilty either; did she?

A.    Nope.

(*Id.* at 21.)

The record, therefore, supports the state court's determination that the petitioner failed to demonstrate that his guilty plea was unknowing and involuntary. This claim is without merit. *See Wright v. Lafler*, 247 F. App'x 701, 705 (6th Cir. 2007) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)) ("A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence.").

## 2.    Exhausted Ineffective-Assistance Claims

The petitioner asserts that trial counsel was ineffective in coercing him to plead guilty and failing to present mitigating evidence at sentencing. (Doc. No. 1 at 2, 5, 7–8.) The federal law governing the adequacy of a criminal defendant's representation is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under *Strickland*, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). Trial counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

694. "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

When a petitioner raises an exhausted ineffective-assistance claim in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. Thus, a federal court applies a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Pinholster*, 563 U.S. at 190). That is because, under Section 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (quoting *Williams*, 529 U.S. at 410). Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Here, the TCCA correctly set forth the *Strickland* standard before rejecting the petitioner's claims for ineffective assistance of trial counsel on the merits. *Edwards*, 2016 WL 1161084, at *4–5. As to the claim that the petitioner's counsel coerced him into pleading guilty, the voluntariness of the petitioner's plea is addressed above. The TCCA's determination on this issue—that the petitioner failed to carry his burden of demonstrating that his guilty plea was unknowing and involuntary—was not unreasonable. In short, counsel was not ineffective for coercing the petitioner to plead guilty because the record reflects that his plea was knowing and voluntary. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750–51 (E.D. Mich. 2005) (citations omitted) (finding that a petitioner's "bare claims that his counsel coerced him" into entering a plea "is insufficient to overcome the presumption of verity which attaches to petitioner's statements during

the plea colloquy, in which he denied that any force or threats had been used to get him to enter his plea").

As to the mitigation claim, the petitioner argues that trial counsel was ineffective at sentencing for failing to present an expert witness to testify regarding his mental health. (Doc. No. 1 at 2, 5, 8.) The TCCA rejected this claim:

> When a petitioner claims that trial counsel was ineffective for failing to discover, interview, or present a witness in support of the petitioner's defense, such witness should be presented at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As this court has previously stated:
>
>> As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.
>
>> *Id.*
>
> In this case, the Petitioner contends that trial counsel was ineffective for failing to present expert testimony about the Petitioner's mental health at the sentencing hearing. However, the Petitioner failed to present any such expert testimony at the post-conviction hearing. Neither the post-conviction court nor this court may speculate as to what the testimony may have been or whether it would have been favorable to the Petitioner. *See id.* at 757. Accordingly, the Petitioner has failed to prove that he was prejudiced by trial counsel's alleged deficiency and is not entitled to relief on this issue.

*Edwards*, 2016 WL 1161084, at *4–5.

Because the petitioner did not present any proof at the evidentiary hearing of what a mental health expert would have testified to, the state court's application of *Strickland* to this claim was not objectively unreasonable. *See Hutchison v. Bell*, 303 F.3d 720, 748–49 (6th Cir. 2002)

(citations omitted) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.") Moreover, the petitioner's apparent aim of using an expert witness at sentencing would have been to present evidence of his "earlier suicide attempt." (Doc. No. 1 at 2.) But the petitioner's mother testified at the sentencing hearing that he attempted suicide when he was about eighteen years old, and that he was subsequently hospitalized for about one week. And the petitioner's trial counsel introduced medical records in support of that testimony. (Doc. No. 13-8 at 84.) Thus, the petitioner's counsel presented evidence at sentencing regarding his earlier suicide attempt, and he does not explain how expert testimony would have been beneficial to him. *See Martin v. Mitchell*, 280 F.3d 594, 607–08 (6th Cir. 2002) (finding that a habeas petitioner failed to demonstrate prejudice where he claimed that his counsel failed to retain "a psychologist for purposes of mitigation" but did not show how "the retention of experts . . . would have been beneficial to his defense"). The petitioner is not entitled to relief on this claim.

### B. Procedurally Defaulted Claims

The petitioner's remaining claims are procedurally defaulted.

#### 1. Statements to Police

The petitioner challenges the constitutionality of his custodial statements to police. (Doc. No. 1 at 2, 5, 8–9.) While he did not raise this claim on direct appeal, the petitioner did check a box on his *pro se* post-conviction petition reflecting that one of his asserted grounds for relief was as follows: "[c]onviction was based on use of coerced confession." (Doc. No. 13-15 at 15.) But he did not provide any argument in support of this assertion, and the petitioner's appointed post-conviction counsel did not include this claim in the amended post-conviction petition. The post-

conviction court did not address the merits of this claim, and the petitioner did not present this issue to the TCCA on post-conviction appeal. Because the petitioner did not fairly present this claim to the state courts, and he can no longer do so, it is procedurally defaulted.

As stated above, the court considers the petitioner's assertion of post-conviction ineffectiveness as an allegation of cause to excuse any procedural default. But "ineffective assistance by a prisoner's state post[-]conviction counsel" can only act as "cause to overcome the default of a single claim—ineffective assistance of trial counsel." *Davila*, 137 S. Ct. at 2062–63 (discussing *Martinez*, 566 U.S. 1, and *Trevino v. Thaler*, 569 U.S. 413 (2013)). Because this claim challenges the constitutionality of the petitioner's statements to police rather than his trial counsel's effectiveness, he cannot rely on his post-conviction counsel's alleged ineffectiveness to overcome its default.

Additionally, and notwithstanding any default, the petitioner waived challenges to the constitutionality of his custodial statements by pleading guilty. The United States Supreme Court has held that, after "solemnly admitt[ing] in open court that he is in fact guilty of the offense with which he is charged, [a criminal defendant] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Brown*, 21 F. App'x 336, 337 (6th Cir. 2001) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)) (finding that a defendant waived a challenge to constitutionality of confession to law enforcement official by pleading guilty). Accordingly, this claim is without merit.

### 2.    Improper Sentence

The trial court applied two mitigating factors and three enhancement factors at sentencing. (Doc. No. 13-8 at 104–06.) The TCCA summarized these factors on direct appeal:

> The trial court first considered mitigating factors: 1) that Defendant, because of his youth, lacked substantial judgment in committing the offense; and 2) that

> Defendant admitted responsibility for the offense. *See* Tenn. Code Ann. § 40–35–113(6). The trial court then found and applied the following enhancement factors: 1) that Defendant has a previous history of criminal behavior, including drug use; 2) that Defendant possessed or employed a firearm in the commission of the offense; and 3) that Defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40–35–114(1), -(9), and -(10).

*Edwards*, 2011 WL 497444, at *3. The court sentenced the petitioner to 21 years' imprisonment "for his second degree murder conviction, for which the possible sentence range [was] 15 to 25 years." *Id.*

Here, the petitioner asserts that the court should have given greater weight to the first mitigating factor listed above—that he lacked substantial judgment in committing the offense because of his youth. (Doc. No. 1 at 3.) This claim is procedurally defaulted because he did not exhaust it either on direct appeal or through his post-conviction proceedings. On direct appeal, the petitioner argued that his sentence was excessive because the court erred in applying the third enhancement factor listed above—that he had no hesitation about committing a crime when the risk to human life was high. (Doc. No. 13-10 at 18–21 (direct appeal brief)); *Edwards*, 2011 WL 497444, at *4. Thus, the petitioner did not raise "the same claim under the same theory" on direct appeal as he does in his habeas petition. *See Wagner*, 581 F.3d at 417. In his amended post-conviction petition, the petitioner did raise this same claim (Doc. No. 13-15 at 36, 40–41), and the trial court rejected it (Doc. No. 13-16 at 6–7). But the petitioner did not include this claim in his post-conviction appeal. Accordingly, the petitioner failed to present this claim to the state courts.

Because this is a claim of trial court error rather than ineffective assistance of counsel, the petitioner cannot rely on any alleged post-conviction ineffectiveness as cause to excuse its default. And even if "the *Martinez–Trevino* exception" could apply to these types of claim generally, it would not apply to this claim in particular because the petitioner raised it at the initial review stage

of his post-conviction proceedings but not on post-conviction appeal. *Atkins*, 792 F.3d at 657

(internal citations and quotation marks omitted) ("[T]he *Martinez–Trevino* exception does not

extend to attorney error at post-conviction appellate proceedings because those proceedings are

not the first occasion at which an inmate could meaningfully raise an ineffective-assistance-of-

trial-counsel claim."). For all of these reasons, the petitioner's improper sentence claim is defaulted

without cause, and it is not subject to further review.

Additionally, even if the court considered this claim exhausted through the petitioner's

excessive-sentence claim on direct appeal, it would fail on the merits. On direct appeal, the TCCA

agreed with the petitioner that the trial court erred by applying the third enhancement factor listed

above. *Edwards*, 2011 WL 497444, at *4. Nonetheless, the TCCA reviewed the petitioner's

sentence and affirmed the trial court's judgment as follows:

> Other than misapplication of one enhancement factor, the trial court's sentencing
> considerations and findings support the sentence imposed.
>
> The trial court found applicable two other enhancement factors supported by the
> evidence that Defendant does not challenge on appeal. In our review of Defendant's
> sentence, we are "bound by [the] trial court's decision as to the length of the
> sentence imposed so long as it is imposed in a manner consistent with the purposes
> and principles set out in sections –102 and –103 of the Sentencing Act." *State v.
> Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). This Court cannot review the weight
> placed on enhancement factors. Rather, our review is limited to whether the
> enhancement factors are supported by the record and appropriately applied. The
> Defendant is responsible for showing that the sentence is excessive, and we
> conclude that he did not meet this burden.

*Id.*

This determination was neither contrary to nor an unreasonable application of clearly

established federal law. Because he was a Range I standard offender, the petitioner's possible

sentence range for his second degree murder conviction was 15 to 25 years. *Edwards*, 2011 WL

497444, at *3; *see* Tenn. Code. Ann. 40-35-112(a)(1). The court sentenced the petitioner to 21

years' imprisonment. "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)) (rejecting a petitioner's federal habeas claim that the state court violated his due process rights by imposing an excessive sentence). Further, the court observes that the petitioner acknowledged his sentence range when he signed the plea petition. (Doc. No. 13-1 at 79.) He also acknowledged that the court would determine the sentence length at a sentencing hearing (Doc. No. 13-1 at 80), and this was reiterated to him at the plea hearing (Doc. No. 13-8 at 3–4). The sentence imposed was four years shorter that the longest sentence he knew he risked when he pleaded guilty. The petitioner is not entitled to relief on this claim.

### 3. Insufficient Evidence

The petitioner also asserts that there was not sufficient evidence to support his conviction of second degree murder. (Doc. No. 1 at 3, 6, 9.) This claim is defaulted without cause—the petitioner did not present it to the TCCA on direct appeal or in his post-conviction proceedings, and he cannot rely on any post-conviction ineffectiveness to overcome this default because this is not a claim of ineffective assistance of counsel. But even if this claim were subject to further review, it would fail on the merits. To the extent that the petitioner challenges the sufficiency of the factual basis for his guilty plea, this claim "is not cognizable in federal habeas." *Bonior v. Conerly*, 416 F. App'x 475, 479 (6th Cir. 2010). And by pleading guilty, the petitioner waived a challenge to the sufficiency of the evidence supporting his conviction. *Post v. Bradshaw*, 621 F.3d 406, 426–27 (6th Cir. 2010) (citing *United States v. Freed*, 688 F.2d 24, 25–26 (6th Cir. 1982)).

### 4.        Defaulted Ineffective-Assistance Claims

Through the petitioner's five remaining sub-claims for ineffective assistance of trial counsel, he asserts that his counsel failed to: (1) move to suppress his statements to police; (2) investigate co-defendant Ryan Lewis; (3) object to application of enhancement factors at sentencing; (4) appeal the court's application of sentencing enhancement factors; and (5) consult with his first appointed attorney. (Doc.  No. 1 at 2, 5, 7, 9–10.) The petitioner procedurally defaulted these sub-claims by failing to present them to the TCCA.

As stated above, a petitioner must demonstrate "cause" and "prejudice" or a "manifest miscarriage of justice" to obtain review of these procedurally defaulted claims. *Middlebrooks*, 843 F.3d at 1134 (citing *Sutton*, 745 F.3d at 790–91). "[I]neffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial." *Atkins*, 792 F.3d at 658 (quoting *Sutton*, 745 F.3d at 795–96). Thus, the court considers the asserted ineffective assistance of post-conviction counsel as an allegation of cause to overcome the default of these claims. To determine whether the petitioner has demonstrated cause, the court considers "(1) whether state post-conviction counsel was ineffective; and (2) whether [the petitioner's] claims of ineffective assistance of counsel were 'substantial.'" *Id.* at 660 (citations omitted). If the petitioner demonstrates "cause," then the court must consider "whether [he] can demonstrate prejudice." *Id.* And if the petitioner establishes both "cause" and "prejudice," only then would the court "evaluate [his] claims on the merits." *Id.* (citations omitted).

First, the petitioner asserts that his counsel was ineffective for failing to file a motion to suppress his inculpatory statements to police. (Doc. No. 1 at 2, 9.) The petitioner has not established cause to overcome this claim's default because the claim is not "substantial." "A

substantial claim is one that has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform below constitutional standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16). Here, this claim is without merit because the petitioner's "guilty plea represent[ed] a break in the chain of events which preceded it in the criminal process," and the petitioner cannot "raise independent claims relating to the deprivation of constitutional rights that occurred" before that point. *Brown*, 21 F. App'x at 337 (quoting *Tollett*, 411 U.S. at 267) (finding that district court's denial of suppression motion was "not reviewable" under *Tollett*).

Second, the petitioner asserts that his counsel failed to investigate co-defendant Ryan Lewis. (Doc. No. 1 at 7.) But the record reflects that the petitioner decided to plead guilty regardless of Lewis's statements. As discussed in the Factual Background section, at the plea hearing, the state provided a summary of Lewis's expected trial testimony as part of the factual basis for the petitioner's plea. The petitioner then testified that these facts were basically true while specifically disputing Lewis's expected testimony. Thus, this claim is without merit for the same reason as the petitioner's first defaulted sub-claim—the alleged failure to investigate Lewis or his statements is a claim "of pre-plea ineffective assistance not relating to the acceptance of the plea" that is "waived under the same *Tollett* rule." *Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001)).

Third, the petitioner argues that counsel was ineffective for failing to object to application of enhancement factors at sentencing. (Doc. No. 1 at 5, 9.) This claim is without merit because the petitioner fails to demonstrate that trial counsel was deficient. The state argued that eight

enhancement factors applied. (Doc. No. 13-1 at 84–85.) At the sentencing hearing, the petitioner's counsel conceded that two of these factors applied. Based on information in the presentence report, counsel conceded that the petitioner had a previous history of criminal behavior in addition to those necessary to establish the appropriate range, (Doc. No. 13-8 at 88–89, 94–95), while attempting to limit the impact of this factor by arguing that the petitioner's criminal history was not violent or extensive. (*Id.* at 89, 95.) Counsel also conceded, based on the facts of the case, that the petitioner possessed or employed a firearm during the commission of the offense. (*Id.* at 92, 94–95.) The petitioner does not identify any objections counsel should have raised regarding these two factors. Meanwhile, counsel specifically disputed the other six asserted enhancement factors (*id.* at 89–95), and the petitioner does not explain how these arguments were deficient. The petitioner is not entitled to relief on this claim.

Fourth, the petitioner asserts that his counsel failed to appeal the court's application of sentencing enhancement factors. (Doc. No. 1 at 5, 9.) Ineffective assistance of post-conviction counsel, however, can only act as cause to excuse a claim of ineffective assistance of *trial* counsel—not a claim of ineffective assistance of *appellate* counsel. *Davila*, 137 S. Ct. at 2065. Accordingly, this claim is defaulted without cause, and it is not subject to further review. Additionally, as explained in the court's analysis of the petitioner's improper sentence claim, a sentence like the petitioner's is "generally not subject to habeas review" because it is within the statutory limit for his offense of conviction. *Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, at *5 (6th Cir. Jan. 9, 2018) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)).

Fifth, and finally, the petitioner asserts that his trial counsel failed to consult with his first appointed attorney.[2] (Doc. No. 1 at 9–10.) According to the petitioner, his first attorney told him that she "worked with the prosecution to a plea to reckless homicide," but "the prosecution wanted to hold his feet to the fire" because he "was an African American and the victim was a white male."[3] (*Id.* at 9.) He also asserts that he asked his trial counsel to "touch base" with his first attorney "about the plea offer that had already been contemplated by previous counsel." (*Id.* at 10).

This claim does not "attack the voluntary and intelligent character" of his plea of guilty to second degree murder, so it is waived. *Rice*, 2016 WL 3877866, at *2 (quoting *Tollett*, 411 U.S. at 267). Moreover, even liberally construing the Petition, the petitioner does not assert that his first attorney's negotiations resulted in a formal plea offer from the state that would have allowed him to plead guilty to a lesser offense. Indeed, the petitioner seems to be under the impression that the state specifically rejected his first attorney's suggestion of pleading guilty to reckless homicide due to a discriminatory animus. The petitioner's trial counsel could not have been deficient for failing to consult with his first attorney about a plea offer that did not exist. *See Ambrose v. Romanowski*, 621 F. App'x 808, 817 (6th Cir. 2015) ("If [the petitioner's] attorneys were never presented with a valid offer, his trial attorney[] could not have failed to convey . . . a legitimate plea offer . . . .").

## VI. Conclusion

For these reasons, the petitioner's claims either fail on the merits or are procedurally defaulted. Accordingly, the Petition will be denied, and this action will be dismissed.

---

[2] As part of his fifth claim, the petitioner also asserts that he was denied his "counsel of choice." (Doc. No. 1 at 10.) But "the right to counsel of choice does not extend to defendants," like the petitioner, "who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (citations omitted).

[3] This assertion of discriminatory animus is entirely speculative and unsupported by specific facts. "Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) (citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991)).

A petitioner may not appeal an adverse final order in a habeas corpus proceeding unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484). Here, the court concludes that the petitioner has not satisfied these standards, and will therefore deny a COA.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge